UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:

JOHNNIE E. WALLS, JR.,                                                    CASE NO. 12-15499-NPO

DEBTOR.                                                                                  CHAPTER 13

MEMORANDUM OPINION AND ORDER ON THE
OBJECTION TO PROOF OF CLAIM OF INTERNAL REVENUE SERVICE

On March 21, 2013, there came on for hearing (the "Hearing") the Motion to Dismiss Chapter 13 Case (the "IRS Motion to Dismiss") (Dkt. 18) filed by the United States of America – Internal Revenue Service (the "IRS"); the Response to Motion to Dismiss (the "Response to IRS Motion to Dismiss") (Dkt. 23) filed by Johnnie E. Walls, Jr. (the "Debtor"); the Trustee's Objection to Confirmation (the "Trustee Objection to Confirmation") (Dkt. 31) filed by Locke D. Barkley ("Trustee"), the duly appointed chapter 13 trustee assigned to the above-referenced bankruptcy case; the Response to Trustee's Objection to Confirmation (the "Response to Trustee Objection to Confirmation") (Dkt. 37) filed by the Debtor; the Trustee's Motion to Dismiss (the "Trustee Motion to Dismiss") (Dkt. 32) filed by the Trustee; the Response to Motion to Dismiss (the "Response to Trustee Motion to Dismiss") (Dkt. 38) filed by the Debtor; the Objection to Proof of Claim of Internal Revenue Service (the "Objection to Proof of Claim") (Dkt. 36) filed by the Debtor; the Response to Objection to Proof of Claim (Dk. 36) (the "Response to Objection to Proof of Claim") (Dkt. 51) filed by the IRS; the Objection to Confirmation (the "IRS Objection to Confirmation") (Dkt. 45) filed by the IRS; and the Response to Objection to Confirmation (the "Response to IRS Objection to Confirmation") (Dkt. 50) filed by the Debtor in the above-referenced bankruptcy case (the "Current Bankruptcy Case"). At the Hearing, Gwendolyn Baptist-Hewlett represented the Debtor, Ralph M. Dean, III represented the IRS, and G. Adam Sanford represented the Trustee.

Under 11 U.S.C. § 109(e),[1] *inter alia*, "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $360,475 . . . may be a debtor under chapter 13 of this title."[2] The Trustee and the IRS filed motions to dismiss the Current Bankruptcy Case arguing that the Debtor is ineligible to be a chapter 13 debtor because his unsecured debts far exceed $360,475.00. (Dkts. 18, 32). In fact, the IRS filed an amended proof of claim in the Current Bankruptcy Case asserting an unsecured nonpriority claim in the amount of $776,675.88 against the Debtor.[3] (Cl. No. 5-3). The Debtor filed the Objection to Proof of Claim arguing that the IRS's $776,675.88 unsecured nonpriority claim was discharged in his prior chapter 7 case. (Dkt. 36).

At the Hearing, the parties disputed whether this Court could decide if the IRS's $776,675.88 unsecured nonpriority claim was discharged in the Debtor's previous bankruptcy in an objection to proof of claim that was filed as a contested matter. The IRS insisted that an adversary proceeding must be filed to determine whether this debt previously was discharged. The Court's determination of whether the IRS's unsecured nonpriority claim was discharged in the Prior Bankruptcy Case[4] will directly affect whether the debtor is eligible to be a chapter 13

---

[1] All code sections hereinafter refer to the Bankruptcy Code unless specifically noted otherwise. "Bankruptcy Code" or "Code" refers to the United States Bankruptcy Code located at Title 11 of the United States Code.

[2] The dollar limits listed in § 109(e) are subject to adjustment every three years. 11 U.S.C. § 104(a). The most recent adjustment to § 109(e) was made after the filing of the Current Bankruptcy Case, and as a result, does not apply. *Id.*

[3] The IRS's amended proof of claim, filed on February 14, 2013, also alleges that the IRS has a $12,099.99 secured claim and unsecured priority claim in the amount of $52,776.21 against the Debtor. (Cl. No. 5-3). The Debtor does not dispute the IRS's secured and unsecured priority claims.

[4] On March 21, 2011, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (the "Prior Bankruptcy Case"). (11-11313-NPO, Dkt. 1).

debtor. Therefore, the parties asked this Court to determine first whether it may decide if the IRS's $776,675.88 unsecured nonpriority claim was discharged in the Prior Bankruptcy Case as a contested matter. Second, assuming that the Court can decide the issue as a contested matter, the parties asked this Court to determine whether the IRS's unsecured nonpriority claim was discharged in the Prior Bankruptcy Case. Until these two preliminary issues are addressed, the parties agreed to hold all other issues raised at the Hearing in abeyance. (Dkt. 58).

After the Hearing, on April 22, 2013, the Memorandum Brief Re: Debtor's Objection to Proof of Claim of Internal Revenue Service (the "Trustee Brief") (Dkt. 53) was filed by the Trustee; the Letter Brief (the "IRS Brief") (Dkt. 54) was filed by the IRS; and the Memorandum in Support of Debtor's Objection to Proof of Claim and Response to Motions (the "Debtor Brief") (Dkt. 55) was filed by the Debtor. On May 6, 2013, the Rebuttal (the "IRS Reply Brief") (Dkt. 56) was filed by the IRS.

The Court, having considered the arguments of counsel in the pleadings and at the Hearing, finds that the issue of whether the IRS's $776,675.88 unsecured nonpriority claim was discharged in the Prior Bankruptcy Case is not properly before this Court as a contested matter governed by Federal Rule of Bankruptcy Procedure 9014 ("Rule 9014"). Instead, for the reasons set forth below, the issue may be raised by either the IRS or the Debtor by filing an adversary proceeding in the Current Bankruptcy Case.

**Jurisdiction**

This Court has jurisdiction over the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A),(B),(I), & (O). Notice of the Hearing was proper under the circumstances.

**Facts**

**Prior Bankruptcy Case**

1. On March 21, 2011, the Prior Bankruptcy Case was filed.

2. On June 14, 2011, the Debtor filed his bankruptcy schedules in the Prior Bankruptcy Case. (11-11313-NPO, Dkt. 16). The Debtor scheduled the IRS as one of his unsecured creditors in Schedule E - Creditors Holding Unsecured Priority Claims ("Schedule E") and in Schedule F - Creditors Holding Unsecured Nonpriority Claims ("Schedule F"). (*Id.* at 11, 15).

3. In Schedule E, the Debtor listed the IRS as holding an unsecured priority claim of $20,657.12 for 2008-2010 taxes. (11-11313-NPO, Dkt. 16 at 11). The Debtor checked the box next to the IRS's claim in Schedule E indicating that it was "unliquidated." (*Id.*). At the same time, the Debtor indicated that none of IRS's claim in Schedule E was entitled to a priority. (*Id.*).

4. In Schedule F, the Debtor listed the IRS as holding two additional unsecured nonpriority claims totaling $915,102.81. (11-11313-NPO, Dkt. 16 at 15). The first IRS claim in Schedule F was listed for the Debtor's 1994, 1995, 1997, 1998, 1999, 2000, 2003, 2004, 2006, and 2007 taxes in the amount of $904,553.05. (*Id.*). The second IRS claim in Schedule F was listed for the Debtor's "941" payroll taxes in the amount of $10,549.76. (*Id.*). Again, the Debtor checked the boxes beside the IRS's claims in Schedule F indicating that the claims were "unliquidated." (*Id.*).

5. On June 15, 2011, the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines (the "Notice") was filed by the chapter 7 trustee. (11-11313-NPO, Dkt. 18). The Notice advised creditors that the Prior Bankruptcy Case was a "no asset case," and, as a

result, creditors should not file a proof of claim. (*Id.* at 2).[5] The Notice also provided that the deadline to file an objection to discharge under §§ 523(a)(2), (a)(4) or (a)(6) was September 26, 2011. (*Id.* at 1-2).

6.      The IRS filed a proof of claim in the Prior Bankruptcy Case for income taxes and civil penalties in the amount of $936,324.30, of which $915,102.81 was identified as secured and $21,221.49 was identified as unsecured priority (the "Prior Proof of Claim") (11-11313-NPO, Cl. No. 1-1).[6]

7.      The first amendment to the Proof of Claim in the Prior Bankruptcy Case was filed on July 11, 2011, prior to the Debtor receiving his chapter 7 discharge. (11-11313-NPO, Cl. No. 1-2). The first amendment to the Prior Proof of Claim, also in the amount of $936,324.30, identified $30,929.73 of the claim as secured, $303,641.83 of the claim as unsecured priority, and $601,752.74 of the claim as unsecured nonpriority. (*Id.*).

8.      On November 23, 2011, an order discharging the Debtor's debts was entered (the "Discharge Order") (11-11313-NPO, Dkt. 60) in the Prior Bankruptcy Case.

9.      After the Discharge Order was entered, on January 20, 2012, the IRS filed a second amendment to the Prior Proof of Claim. (11-11313-NPO, Cl. No. 1-3). This amendment, in the amount of $915,102.81, identified $30,929.73 of the claim as secured, $282,420.34 of the claim as unsecured priority, and $601,752.74 of the claim as unsecured nonpriority. (*Id.*).

10.     The Prior Bankruptcy Case was closed on March 8, 2012. (11-11313-NPO, Dkt. 79).

---

[5] "In a Chapter 7 no-asset case, the creditor has no obligation to file a proof of claim . . . , hence nothing to gain or lose from filing a 'timely' claim." *Omni Mfg. v. Smith* (*In re Smith*), 21 F.3d 660, 663 (5th Cir. 1994).

[6] The Prior Proof of Claim subsequently was amended three times.

11. On April 9, 2012, the Debtor filed a Motion to Reopen Debtor's Chapter 7 Case in order to add the Mississippi Department of Revenue to his list of creditors. (11-11313-NPO, Dkt. 81).

12. On April 10, 2012, an order reopening the Prior Bankruptcy Case was entered. (11-11313-NPO, Dkt. 82).

13. After the Prior Bankruptcy Case was reopened, on August 22, 2012, the IRS filed a third amendment to the Prior Proof of Claim asserting a claim against the Debtor in the amount of $971,947.34, of which $30,929.73 was identified as secured, $332,118.12 was identified as unsecured priority, and $608,899.49 was identified as unsecured nonpriority. (11-11313-NPO, Cl. No. 1-4).

14. On October 22, 2012, the Debtor filed a motion to convert the Prior Bankruptcy Case from a chapter 7 case to a chapter 13 case (11-11313-NPO, Dkt. 84) and, on November 20, 2012, an Order Converting a Chapter 7 Case to a Chapter 13 Case (11-11313-NPO, Dkt. 88) was entered.

15. On December 13, 2012, the Trustee filed the Trustee's Motion to Dismiss (11-11313-NPO, Dkt. 114) and the Trustee's Amended Motion to Dismiss (11-11313-NPO, Dkt. 116) contending, *inter alia*, that the Debtor was ineligible to be a chapter 13 debtor because his unsecured debts exceeded the unsecured debt limit set forth in § 109(e).

16. The IRS filed a Motion to Dismiss Chapter 13 Case in the Prior Bankruptcy Case also alleging, based upon the amount of its unsecured claim as listed in the third amendment to the Prior Proof of Claim, that the Debtor's unsecured debts exceeded the unsecured debt limit in § 109(e). (11-11313-NPO, Dkt. 124).

17. The Debtor responded to the Trustee's Amended Motion to Dismiss. (11-11313-NPO, Dkt. 122). On December 26, 2012, the Trustee erroneously submitted the Order Granting Motion to Dismiss (the "Dismissal Order") (11-11313-NPO, Dkt. 133), incorrectly citing as grounds for its entry that the Debtor failed to respond to the Amended Motion to Dismiss. The Dismissal Order was entered. No action was timely taken by the Debtor to set aside the Dismissal Order.

**Current Bankruptcy Case**

18. On December 27, 2012, the Debtor filed the Current Bankruptcy Case. (Dkt. 1).

19. On January 9, 2013, the Debtor filed his bankruptcy schedules in the Current Bankruptcy Case. (Dkt. 12). Again, the Debtor scheduled the IRS as one of his unsecured creditors in Schedule E and in Schedule F. (*Id.* at 10 - 11).

20. In Schedule E, the Debtor listed the IRS as holding an unsecured priority claim in the amount of $20,657.12 for taxes and civil penalties. (*Id.*). The Debtor checked the box next to the IRS's claim indicating that it was "unliquidated." (*Id.*).

21. In Schedule F, the Debtor listed the IRS as holding an unsecured nonpriority claim in the amount of $10,549.76 for "941" payroll taxes. (Dkt. 12 at 11). The Debtor checked the box beside the IRS's claim in Schedule F indicating that the claim was "unliquidated." (*Id.*).

22. On January 9, 2013, the Debtor filed his chapter 13 plan (Dkt. 14) in which he proposed to pay the IRS's unsecured priority claim in monthly installments of $344.29 per month and to pay nothing to his unsecured nonpriority creditors through the life of the plan. The Debtor filed an amended chapter 13 plan (the "Plan") (Dkt. 19) on January 16, 2013, which proposed to pay the IRS $344.29 per month toward its unsecured priority claim and nothing to his unsecured nonpriority creditors, including the IRS.

23. On January 15, 2013, the IRS filed the IRS Motion to Dismiss again arguing that the Debtor is ineligible to be a chapter 13 debtor because his unsecured debts exceed the unsecured debt limit of $360,475.00 set forth in § 109(e). (Dkt. 18). The IRS stated in the IRS Motion to Dismiss that it intends to file a proof of claim in the Current Bankruptcy Case "again showing that the unsecured claim [held by the IRS] exceeds the limitations of 11 U.S.C. § 109(e)." (*Id.*).

24. On January 23, 2013, the Debtor filed the Response to IRS Motion to Dismiss arguing that a "substantial portion" of the IRS's unsecured nonpriority claim was discharged in the Prior Bankruptcy Case, and, as a result, that the IRS's unsecured claims do not render him ineligible for chapter 13 relief. (Dkt. 23).

25. On February 6, 2013, the IRS filed a proof of claim in the Current Bankruptcy Case. (Cl. No. 5-1). The IRS has subsequently amended its proof of claim twice, on February 8, 2013, and on February 14, 2013, respectively. (Cl. No. 5-2, 5-3).[7]

26. On February 12, 2013, the Trustee filed the Trustee Objection to Confirmation. (Dkt. 31) insisting that the Plan, as proposed, is not feasible and should not be confirmed.

27. Contemporaneously with the Trustee Objection to Confirmation, the Trustee filed the Trustee Motion to Dismiss (Dkt. 32) in the Current Bankruptcy Case alleging that the Debtor's unsecured debts exceed the debt limit in § 109(e) for chapter 13 relief.

28. On February 14, 2013, the IRS filed the Current Proof of Claim in the amount of $841,552.08 for income taxes and civil penalties. (Cl. No. 5-3). The Current Proof of Claim identified a $12,099.99 secured claim, a $52,776.21 unsecured priority claim, and a $776,675.88 unsecured nonpriority claim owed to the IRS by the Debtor. (*Id.*).

---

[7] Hereinafter, the proof of claim filed by the IRS in the Current Bankruptcy Case on February 14, 2013, shall be referred to as the "Current Proof of Claim."

29. On February 14, 2013, the Debtor filed the Objection to Proof of Claim (Dkt. 36) in which he argued that the Current Proof of Claim incorrectly states the amount of the IRS's unsecured nonpriority claim in the Current Bankruptcy Case. According to the Debtor, the $776,675.88 unsecured nonpriority claim listed in the Current Proof of Claim was discharged in the Prior Bankruptcy Case. (*Id.*).

30. On February 14, 2013, the Debtor filed the Response to Trustee Objection to Confirmation (Dkt. 37) providing that the Plan, as proposed, is feasible and that the "Debtor's income is sufficient to fund" the Plan.

31. On February 14, 2013, the Debtor also filed the Response to Trustee Motion to Dismiss (Dkt. 38) in which he reiterated his position that the $776,675.88 unsecured nonpriority claim asserted by the IRS in the Current Proof of Claim was discharged in the Prior Bankruptcy Case. (*Id.*).

32. On February 20, 2013, the IRS filed the IRS Objection to Confirmation. (Dkt. 45). The IRS noted that it filed the Current Proof of Claim alleging a $12,099.99 secured claim and a $52,776.21 unsecured priority claim is owed by the Debtor to the IRS. (*Id.*). According to the IRS, its secured claim is secured by a federal tax lien recorded on January 7, 2010. (*Id.*). The IRS pointed out that the Plan, as proposed, does not provide for payment of this secured claim to the IRS. (*Id.*). Additionally, the Plan only provides for payment of $20,657.12 toward the IRS's unsecured priority claim. (*Id.*). The IRS, however, insists its unsecured priority claim is in the amount of $52,776.21. (*Id.*). For the foregoing reasons, the IRS believes the Plan, as proposed, should not be confirmed. (*Id.* at 2).

33. On March 7, 2013, the Debtor filed its Response to IRS Objection to Confirmation (Dkt. 50) in which he agreed with the amount of the IRS's unsecured priority claim

listed in the Current Proof of Claim. The Debtor failed to indicate whether he agreed with the amount of the IRS's secured claim listed in the Current Proof of Claim. (*Id.*). Again, the Debtor stated his position that the IRS's $776,675.88 unsecured nonpriority claim was discharged in the Prior Bankruptcy Case. (*Id.*).

34. On March 12, 2013, the IRS filed the Response to Objection to Proof of Claim (Dkt. 51) in which it acknowledged that the Debtor received a chapter 7 discharge in the Prior Bankruptcy Case in November, 2011. The IRS, however, disagreed with the Debtor that its $776,675.88 unsecured nonpriority claim was discharged at that time.

35. On March 21, 2013, the Hearing was held. At the Hearing, the parties initially attempted to resolve their disputes by agreeing that the Debtor would pay 5% toward all unsecured nonpriority claims, including the IRS's unsecured nonpriority claim of $776,675.88, through the Plan. The Court advised the parties that the unsecured debt limit in § 109(e) appears to be jurisdictional and cannot be waived. *In re Kelsey*, 6 B.R. 114, 117 (Bankr. S.D. Tex. 1980). Next, the Debtor argued at the Hearing that his unsecured debts did not exceed the limits of § 109(e) because he disputed the IRS's unsecured nonpriority claim as listed in the Proof of Claim. The Court advised the Debtor that "'[b]ecause Congress did not insert the term disputed in § 109(e), disputed debts must be counted in determining whether a petitioner may be a debtor under Chapter 13.'" *NCI Bldg. Sys. LP v. Harkness* (*In re Harkness*), 189 F. App'x 311, 313 (5th Cir. 2006) (unpublished). Ultimately, the parties agreed that before the Court could decide whether the Debtor was eligible to be a chapter 13 debtor, it must decide whether the IRS's unsecured nonpriority claim was discharged in the Prior Bankruptcy Case. The IRS argued that the issue of whether its unsecured nonpriority claim was discharged in the Prior Bankruptcy Case was not properly before the Court in the Objection to Proof of Claim because it was filed as a

contested matter. Instead, the IRS argued that the issue must be raised in an adversary proceeding. The Debtor disagreed.

36. Thereafter, on April 22, 2013, the Trustee filed the Trustee Brief (Dkt. 53). The Trustee, in the Trustee Brief, argued that this Court lacks jurisdiction in the Current Bankruptcy Case to determine whether the IRS's unsecured nonpriority claim was discharged in the Prior Bankruptcy Case. (*Id.* at 1). According to the Trustee, the Prior Bankruptcy Case must be reopened and an adversary filed therein to make that determination. (*Id.* at 1-2). The Trustee reached this conclusion based upon the "plain language" of Rule 4007 of the Federal Rules of Bankruptcy Procedure ("Rule 4007"), which, according to the Trustee, "limits . . . jurisdiction to the case [in] which the discharge is granted." (*Id.* at 2). The Trustee stated that "Rule 4007 does not allow a debtor or creditor to seek [a] determination [of dischargeability] in a subsequent case." (*Id.* at 3). Additionally, the Trustee argued that many courts, including the Fifth Circuit, have held that the deadline for objecting to discharge set forth in Rule 4007(c), which governs objections to discharge under §§ 523(a)(2), (a)(4), and (a)(6), is jurisdictional. (*Id.* at 3-4). Therefore, by analogy, Rule 4007(b), which governs objections to discharge under the other subsections of § 523, similarly limits jurisdiction to the case in which the discharge order is granted. (*Id.* at 4).

37. On April 22, 2013, the IRS filed the IRS Brief (Dkt. 54) in which it again argued that the determination of whether its unsecured nonpriority claim was discharged in the Prior Bankruptcy Case must be raised in an adversary proceeding. The IRS did not, however, specify whether the adversary proceeding should be brought in the Current Bankruptcy Case or the Prior Bankruptcy Case. (*Id.*).

38.     On April 22, 2013, the Debtor filed the Debtor Brief (Dkt. 55).  In the Debtor Brief, the Debtor did not indicate whether he believed the dischargeability issue should be heard as a contested matter or as an adversary proceeding.  (*Id.*).  The Debtor simply stated that an adversary proceeding was not required to make the debt dischargeable.  (*Id.* at 4).  In support of his position, the Debtor cited *Burke v. State of Ga. (In re Burke)*, 200 B.R. 282, 288 (Bankr. S.D. Ga. 1996), which held that "[t]he extent of a debtor's discharge is final at the time the discharge order is entered . . . . [a] later adversary proceeding at most resolves whether a particular debt was within the original scope of the discharge."  (*Id.*).

39.     On May 6, 2013, the IRS filed the IRS Reply Brief.  (Dkt. 56).

40.     On May 9, 2013, an Agreed Order Holding Motions and Objections in Abeyance (Dkt. 58) pending further order of this Court was entered.

## Discussion

When an individual files for relief under the Code, an estate "consisting of all his property 'wherever located and by whomever held'" is created.  *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 368 (2007) (*citing* 11 U.S.C. § 541(a)).  In a chapter 7 bankruptcy, the estate is liquidated and then distributed to creditors as payment of their claims.  *Id.* at 367.  In return, the debtor typically is granted a discharge of most of his debts that arose before the filing of the petition.  *Id.*  The Code, however, excludes certain debts from discharge in bankruptcy.  11 U.S.C. § 523; *see also Kontrick v. Ryan*, 540 U.S. 443, 447 (2004).

Section 523 excepts nineteen (19) categories of debt from discharge.  Debts listed in §§ 523(a)(2), (a)(4) and (a)(6) are automatically discharged in bankruptcy unless a creditor objects to their dischargeability by filing an adversary proceeding.  FED. R. BANKR. P. 4007 (advisory committee notes).  A creditor who wishes to object to the dischargeability of a debt

under §§ 523(a)(2), (a)(4) or (a)(6) must file a complaint within sixty (60) days of the first scheduled meeting of creditors. FED. R. BANKR. P. 4007(c). Bankruptcy courts have exclusive jurisdiction to determine whether a debt is non-dischargeable under §§ 523(a)(2), (a)(4) and (a)(6). FED. R. BANKR. P. 4007(c).

Those debts excluded from discharge not listed in §§ 523(a)(2), (a)(4) or (a)(6), including certain tax debts, are automatically excepted from discharge. *Range v. United States* (*In re Range*), 48 F. App'x 103 (5th Cir. 2002) (unpublished). As a result, a complaint to determine the dischargeability of a debt, other than a debt listed in §§ 523(a)(2), (a)(4) or (a)(6), may be filed at any time. FED. R. BANKR. P. 4007(b). In fact, if the debt is one arising under a subsection of 523 other than (a)(2), (a)(4), or (a)(6), a closed bankruptcy case may be reopened for the sole purpose of filing an adversary proceeding to determine whether the debt was excepted from discharge. *Id.* Jurisdiction over the dischargeability of a debt under § 523, other than under §§ 523(a)(2), (a)(4) or (a)(6), does not lie exclusively with the bankruptcy court. FED. R. BANKR. P. 4007 (advisory committee notes). "Rather, the Bankruptcy Court has concurrent jurisdiction with non-bankruptcy forums to determine the issue of dischargeability." *In re Bingham*, 163 B.R. 769, 772 (Bankr. N.D. Tex. 1994).

In the Prior Bankruptcy Case, the Debtor filed for relief under chapter 7 of the Code on March 21, 2011. The Debtor received a discharge and the case was subsequently closed. Neither the Debtor nor the IRS filed an adversary proceeding in the Prior Bankruptcy Case to determine whether any portion of the IRS's claim was discharged. Soon after the Prior Bankruptcy Case was dismissed, the Debtor filed the Current Bankruptcy Case. In the Current Bankruptcy Case, the IRS filed the Current Proof of Claim asserting a $12,099.99 secured claim, a $52,776.21 unsecured priority claim, and a $776,675.88 unsecured nonpriority claim against

the Debtor. In response, the Debtor filed the Objection to Proof of Claim insisting that the IRS's $776,675.88 unsecured nonpriority claim was discharged in the Prior Bankruptcy Case.

A proof of claim that is filed in accordance with the Rules "constitute[s] prima facie evidence of the validity and amount of the [creditor's] claim." FED. R. BANKR. P. 3001(f). A creditor's claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). The filing of an objection to a proof of claim initiates a contested matter governed by Rule 9014. *I.R.S. v. Taylor* (*In re Taylor*), 132 F.3d 256, 260 (5th Cir. 1998). If, however, a party includes in an objection to proof of claim a demand for relief of the kind specified in Rule 7001 of the Federal Rules of Bankruptcy Procedure ("Rule 7001"), the demand should be pursued in an adversary proceeding. FED. R. BANKR. P. 3007(b). In that regard, Rule 7001 provides that a "proceeding to determine the dischargeability of a debt" should be filed as an adversary proceeding. FED. R. BANKR. P. 7001(6). "Because Rule 7001(6) covers disputes over the dischargeability of a debt, Rule 3007(b) precludes a debtor from objecting to a claim's dischargeability in the main bankruptcy case. Such objections must be made in an adversary proceeding." *In re Donson*, 434 B.R. 471, 474 (Bankr. S.D. Tex. 2010).

An adversary proceeding is a lawsuit filed within the bankruptcy case. 9 *Collier on Bankruptcy* ¶ 7001.01 (16th ed. 2011). An adversary proceeding "incorporates [many] of the Federal Rules of Civil Procedure . . . and [it] equate[s] to [a] full-blown lawsuit[]." *Feld v. Zale Corp.* (*In re Zale Corp.*), 62 F.3d 746, 762 (5th Cir. 1995). A contested matter, on the other hand, is "generally designed for the adjudication of simple issues, often on an expedited basis" and, therefore, "require[s] fewer procedural protections." *Id.* at 762-63.

Considering the foregoing, the Court finds that it is inappropriate to decide whether a debt is dischargeable in an objection to proof of claim filed as a contested matter in which the

parties have "fewer procedural protections."[8] Instead, if the parties wish for this Court to decide whether the IRS's unsecured nonpriority claim was discharged in the Prior Bankruptcy Case, they must file an adversary proceeding. The Court next turns to the issue as to where the adversary proceeding may be filed.

The Trustee, in the Trustee Brief, insisted that the determination whether the IRS's unsecured nonpriority claim was discharged in the Prior Bankruptcy Case may only be made in an adversary proceeding filed in the Prior Bankruptcy Case. (Dkt. 53 at 1-2). According to the Trustee, this Court lacks jurisdiction in the Current Bankruptcy Case to decide whether the IRS's unsecured nonpriority claim was discharged in the Prior Bankruptcy Case. (*Id.* at 2). The Trustee argued that "[t]he plain language of Rule 4007 limits the jurisdiction to the case which the discharge is granted." (*Id.*). The Trustee cited cases holding that the deadline for filing a dischargeability complaint under Rule 4007(c) is jurisdictional as further evidence of its position, stating "many courts, including the Fifth Circuit, have ruled that the time limitation of Rule 4007(c) removes jurisdiction of the bankruptcy courts should that time lapse without the filing of a complaint or a request to extend the deadline," and by analogy, "Rule 4007(a) and (b) limit the jurisdiction for complaints other than under section 523(c) of the Code to the case which the

---

[8] The Court acknowledges that at least one bankruptcy court in the Fifth Circuit has found that the purposes of Rule 3007 would not be furthered by converting a contested matter to an adversary proceeding where the affected creditor "has appeared before the Court in connection with [the] contested matter, and [] vigorously defend[ed] its claim." *In re Good*, 428 B.R. 235, 243 (Bankr. E.D. Tex. 2010). In the instant case, the IRS filed a Response to Objection to Proof of Claim and appeared at the Hearing to defend the Proof of Claim. However, at the Hearing, and in the IRS Brief that followed, the IRS argued that the issue of whether its $776,675.88 unsecured nonpriority claim was discharged in the Prior Bankruptcy Case should be heard as an adversary proceeding. As a result, this Court finds that the issue should be raised in an adversary proceeding in the interest of giving the parties greater procedural protection.

discharge order is granted." (*Id.* at 4). The Court disagrees with the Trustee's analysis for two reasons.

First, it is unclear whether the Fifth Circuit considers the deadline for objecting to discharge under §§ 523(a)(2), (a)(4) and (a)(6) to be jurisdictional. *Cage v. Watson* (*In re Watson*), No. 07-3328, 2007 WL 4480130, at *3 n.3 (Bankr. S.D. Tex. Dec. 14, 2007). The United States Supreme Court has held that the deadline for objecting to a debtor's discharge under Rule 4004(a) was not jurisdictional. *Kontrick*, 540 U.S. at 447. The *Kontrick* Court reasoned that "essentially the same time prescriptions apply" under Rule 4004(a) and 4007(c). *Id.* at 448 n.3. As a result, several bankruptcy courts in the Fifth Circuit have held, based upon the Supreme Court's holding in *Kontrick*, that the deadline for objecting to discharge under §§ 523(a)(2), (a)(4) and (a)(6) is similarly non-jurisdictional. *See, e.g., Owen v. Miller (In re Miller)*, 333 B.R. 368, 370-71 (Bankr. N.D. Tex. 2005). This Court agrees with those bankruptcy courts that have interpreted *Kontrick* to hold that Rule 4007(c) is not jurisdictional, and by extension, also finds that the language of Rule 4007(b) does not prohibit a debtor from filing a dischargeability complaint in a subsequently filed case.

Second, bankruptcy courts have exclusive jurisdiction to decide whether a debt is dischargeable under §§ 523(a)(2), (a)(4) and (a)(6). If, however, the debt is one arising under a subsection of 523 other than (a)(2), (a)(4), or (a)(6), bankruptcy courts have concurrent jurisdiction with non-bankruptcy courts to determine if the debt is dischargeable. For example, after a bankruptcy case has been closed, a state court may decide whether the previous debtor's student loans were discharged in bankruptcy. *Ind. Univ. v. Canganelli*, 501 N.E.2d 299 (Ill. App. Ct. 1986).

If a non-bankruptcy forum may decide whether a debt was previously discharged in bankruptcy, the Court finds it similarly may decide whether the IRS's unsecured nonpriority claim was discharged in the Prior Bankruptcy Case in the Current Bankruptcy Case. The Court observes that an adversary proceeding to determine whether a debt is excepted from discharge will typically be filed in the bankruptcy case in which the debt was or would be discharged. The instant case, however, is not the usual case. In order for the parties to file an adversary proceeding in the Prior Bankruptcy Case, the Current Bankruptcy Case would have to be closed[9] and the Prior Bankruptcy Case reopened. Then, once the dischargeability determination was made, the Prior Bankruptcy Case would again have to be closed and the Current Bankruptcy Case again reopened. The Court finds it is unnecessary for the parties to jump through such procedural hoops to decide whether the IRS's unsecured nonpriority claim was discharged in the Prior Bankruptcy Case.

## Conclusion

For the reasons stated above, the Court finds that the issue of whether the IRS's unsecured nonpriority claim was discharged in the Prior Bankruptcy Case may not be heard as a contested matter. Instead, if the parties wish for the matter to be heard in bankruptcy court, either the IRS or the Debtor may file an adversary proceeding in the Current Bankruptcy Case.

SO ORDERED.

---

[9] "As a general rule, a debtor may not have two bankruptcy cases pending simultaneously." *In re Russell*, 348 B.R. 441, 448 (Bankr. S.D. Tex. 2006).